978 So.2d 238 (2008)
Alvin B. OLESH, Appellant,
v.
Patricia GREENBERG, Appellee.
No. 5D07-537.
District Court of Appeal of Florida, Fifth District.
April 4, 2008.
Alvin B. Olesh, Orlando, pro se.
John R. Hamilton of Foley & Lardner LLP, Orlando, for Appellant.
Mark P. Lang and Kasia Pabis of Mark Lang & Associates, Winter Park, for Appellee.
SAWAYA, J.
Alvin Olesh appeals the summary final judgment entered in favor of Patricia Greenberg on his three-count complaint seeking partition of residential real property, an accounting and imposition of a constructive trust, and damages for unjust enrichment. He argues that the trial court: (1) abused its discretion in denying his motion for rehearing after the trial court granted Greenberg's motion for summary judgment; (2) erred in dissolving the lis pendens; and (3) abused its discretion in refusing to allow him to amend his complaint. Each issue will be discussed in the order presented.

Factual and Procedural Background
Typical of so many cases we see today, this case involves domestic discord between two individuals, Alvin Olesh and Patricia Greenberg, who once had affection for one another. It is not necessary to chronicle the events that led to their current state of domestic affairs. Suffice it to say that they crossed that proverbial fine line between love and hate, and now animus permeates their relationship, which they seek to end. But first, they must settle their differences regarding property each claims to own to the exclusion of the other. Therefore, the focus of our discussion will be the property dispute, the procedural maneuvers instituted by each party to establish their claim to the property, and the legal morass Olesh found himself *240 in due to the incompetent representation he received from his attorney.
Although Olesh and Greenberg were never married, they acquired a home, which was titled solely in Greenberg's name. Olesh contends that because he believed that he and Greenberg had agreed to marry, he provided $70,000 for the down payment of the home and further provided a brokerage account for the couple's use. In addition to the funds spent on the home, Olesh claims that he caused a substantial sum (apparently over $1 million) of his own money to be transferred into the brokerage account that was also titled solely in Greenberg's name.
Olesh discovered that a large portion of the funds in the brokerage account had disappeared and, when confronted, Greenberg refused to discuss the situation or account for the funds. The two ended their relationship, mutual domestic violence injunctions were put into place, and the house was put up for sale. Olesh filed a notice of lis pendens against the real property, which allegedly hampered the sale thereof. He hired an attorney, who filed the three-count complaint on his behalf. The poor drafting of the complaint was a harbinger of the standard of representation the attorney was to afford Olesh.
After Greenberg filed her answer, her attorney sent Olesh interrogatories, a request for production, and several requests for admissions. Olesh's attorney never filed a response to any of these requests and failed to answer the interrogatories. There were no attempts at discovery by Olesh's attorney other than scheduling Greenberg's deposition which was, for reasons unknown, subsequently cancelled. A year after the complaint was filed, Greenberg, with new counsel of her own, filed a motion for summary judgment with attachments, which included her affidavit, the deed, and the mortgage to the real property. In her motion, Greenberg alleged that she was the sole owner of the real property and that any funds she received from Olesh were a gift. Remarkably, Olesh's attorney did not file an affidavit in opposition to the motion, nor was any other response to the motion filed. Greenberg also filed a motion to dissolve the lis pendens.
Olesh's attorney did attend the hearing on the motion for summary judgment and the following excerpt from the presentation he made at the hearing, which appears after the argument presented by Greenberg's attorney, is quite revealing of the level of incompetence displayed by Olesh's attorney:
Thank you, Your Honor. My opponent is a very fine lawyer, a very good advocate for his client and certainly deserves to be congratulated for his hard work in this area. He spent a lot of time and probably killed quite a few trees in the process. I'm a simple lawyer, an environmentalist and perhaps even you might call me a tree hugger.
I don't understand where he says that we have prepared nothing because I know that I met with my client and we dictated answers to these things. But the bottom line is that the documents that Mr. Lang is claiming, we don't have anything because my client was not in the home and all this stuff was put in a storage locker that we still are negotiating about releasing all that property. And until we can get to that, we don't have access to other than one box that was in my office that I went through with my client.
And while doing that, I discovered this stained envelope that was sealed. I'm the one that opened it and I faxed a copy of the contents of this letter to Mr. Lang earlier this week. And I believe that what this letter reflects should be sufficient at this point for the court to *241 deny the motion for summary judgment in this situation. And Mr. Lang has a copy of this letter.
What is especially remarkable about this excerpt is the extraordinarily feeble attempt on the part of Olesh's attorney to introduce into the record the letter whereby Greenberg actually acknowledged and agreed to Olesh's interest in the real property. More importantly, instead of attempting to introduce a copy of the letter signed by both Olesh and Greenberg, Olesh's attorney apparently attempted to introduce a copy of the letter that existed prior to Greenberg signing it. That letter, dated November 2002, provides that Olesh would be depositing his money into an account that Greenberg was to open at Chase Manhattan Bank with Olesh as power of attorney. The money was to be used for a home in Florida, and Olesh promised to make the down payment money available when Greenberg was ready to purchase a house. The letter concludes with the statement, "As we agreed, this money is not a gift but a contribution toward the purchase of a house. Furthermore you agree to put my name on the deed in Florida once you buy a house." The letter contemplates that Olesh would transfer his brokerage account with over $1 million in it into Greenberg's name "to give you the sense of security that you claim you need. I am also making this transfer because we are planning to get married and you stated unequivocally that you will transfer this account back to me whenever I ask you to do so. As I explained to you, this transferring of the account to your name is not a gift." The letter is purportedly signed by both Olesh and Greenberg.
In any event, Greenberg's attorney denied ever receiving a copy of the letter and lodged an objection to its introduction, which was sustained by the trial court. Olesh's attorney then requested an opportunity to amend the complaint, citing the fact that Greenberg had been given an opportunity to file an amended answer. The trial court denied this request and orally pronounced that summary judgment in favor of Greenberg was proper. After the hearing, Olesh wisely retained another attorney, who filed a Motion for Reconsideration and Rehearing prior to the trial court's rendition of the written judgment we now review. Attached to the motion were the affidavit of Olesh, which denied the assertions by Greenberg in her affidavit, and a copy of the above referenced letter containing the signatures of both Olesh and Greenberg. Without ruling on this motion, the trial court rendered the summary final judgment.
Olesh subsequently filed a Motion for Leave to File Amended Complaint on the grounds that his prior counsel had rendered ineffective assistance. The motion referenced prior counsel's inept complaint and strange behavior during the summary judgment hearing and asserted that the complaint did not state the totality of the causes of action that Olesh had against Greenberg. The motion pointed out that Greenberg had been allowed to amend her answer and affirmative defenses after she had obtained new counsel. Olesh also filed a Supplemental Affidavit in which he denied Greenberg's allegation that he forged her signature on the letter. He states that he personally witnessed Greenberg sign the letter and explains that he had kept a copy of the letter prior to Greenberg's signing of it and that copy was what his prior attorney had provided at the summary judgment hearing. The trial court subsequently denied the Motion for Reconsideration and Rehearing, and Olesh appeals.

Denial of the Motion for Reconsideration and Rehearing
Olesh agrees that at the time of the hearing, summary judgment was warranted *242 because Greenberg's affidavits and evidence did demonstrate a prima facie entitlement to summary judgment, and he failed to rebut that evidence so as to raise a material fact question. However, he asserts that under the circumstances of this case, the trial court abused its discretion in refusing to allow rehearing. His request for rehearing was timely, and his motion was accompanied by evidence clearly showing that a material question of fact existed that would preclude summary final judgment. Had Olesh's affidavit regarding the circumstances of the letter agreement and the attached letter, complete with signatures of both parties, been filed prior to the hearing, then Greenberg's motion would clearly have been denied, he points out. Specifically, Olesh contends that because every indication is that his prior attorney's representation was so inadequate as to be almost nonexistent, Olesh should have been given some leeway when his new attorney came on board and demonstrated that there was indeed a material fact question in the case.
Olesh relies on the factually similar case of Fernandes v. Boisvert, 659 So.2d 412 (Fla. 2d DCA 1995). In Fernandes, the appellant's attorney failed to file an affidavit in response to a summary judgment motion and further failed to seek additional time to obtain such an affidavit or move for a continuance of the summary judgment hearing. Thus, the trial court was essentially left with no choice but to grant summary judgment. The appellant's attorney then filed a "vague and rambling" document that was treated by the trial court as a motion for rehearing. In support of the motion, the attorney did attach an affidavit which, had it been filed and served prior to the summary judgment hearing, would have precluded summary judgment because it did raise material fact issues in the case. However, the trial court refused to consider this belated affidavit and denied rehearing. The appellate court held that under those circumstances, the trial court had abused its broad discretion:
We are thus confronted with the question of whether the trial court abused its discretion in refusing to rescue Fernandes from the apparent incompetence of her lawyer. We recognize the broad discretion of the trial court in matters of this kind. While we do not know the underlying reasons which compelled the attorney to pursue this matter in the way he did, it is apparent to us that something has gone awry. Therefore, in light of the unique circumstances presented here, we determine that the trial court abused its discretion in refusing to consider Fernandes' affidavit on rehearing. See Coastal States Mortgage Corp. v. Commonwealth Sav. & Loan Ass'n, 497 So.2d 917 (Fla. 3d DCA 1986); Wiskeman v. First Bank of Hollywood Beach, 405 So.2d 1044 (Fla. 3d DCA 1981); see also Tooke v. Downing, 564 So.2d 250 (Fla. 1st DCA 1990). Accordingly, we vacate the final judgment and remand this case for disposition on the merits.
Id. at 413 (footnote omitted).
Two years later, in Fatherly v. California Federal Bank, FSB, 703 So.2d 1101 (Fla. 2d DCA 1997), the same appellate court again reversed a summary judgment where, although the opponent of the summary judgment motion failed to file anything in opposition to the motion, the opponent hired new counsel after suffering the summary judgment and that counsel filed a timely motion for rehearing with attached evidence supporting her claim that summary judgment was improper. The bank did not attempt to controvert this belated filing, yet the trial court denied rehearing anyway. Fatherly appealed, *243 and the court reversed. Referring to Fernandes, the court explained:
The circumstances of the instant case are similarly disturbing. Most assuredly, something has gone awry here. The allegations in Fatherly's sworn motion for rehearing would defeat California Federal's motion for summary judgment. If proved, those allegations could save Fatherly's home from foreclosure. We conclude that the circuit court abused its discretion in refusing to consider Fatherly's sworn allegations on rehearing. Accordingly, we reverse the final judgment and remand this case for disposition on the merits. On remand, Fatherly shall be permitted to amend her pleadings to properly allege the affirmative defenses contained in her prior answer and in her motion for rehearing.
Id. at 1103.
The instant case, like Fernandes and Fatherly, involved the apparently negligent legal representation of the party opposing the summary judgment. Olesh obtained new counsel post-hearing, who was able to file the Motion for Reconsideration and Rehearing prior to the rendition of the final summary judgment. The motion included attachments and an affidavit clearly raising material questions of fact which, if true, would not only preclude summary judgment, but would entitle Olesh to a portion of the proceeds of the sale of the home. The record clearly reflects that Olesh's original attorney rendered substandard legal representation. Based on these unique facts and circumstances, we believe that the "trial court abused its discretion in refusing to rescue [Olesh] from the apparent incompetence of [his] lawyer." Fernandes, 659 So.2d at 413 (footnote omitted). The summary judgment must, therefore, be reversed.

The Lis Pendens
In light of our reversal of the summary judgment, we also reverse the order dissolving the lis pendens, which was dissolved primarily because of the outcome of the summary judgment motion filed by Greenberg. See Mr. Sign Sign Studios, Inc. v. Miguel, 877 So.2d 47, 48 n. 1 (Fla. 4th DCA 2004) ("Because we reverse as to the summary judgment issue, we decline to address the other issues presented on appeal as the lis pendens will be reinstated."); cf. Fla. R. Civ. P. 1.420(f) ("If a notice of lis pendens has been filed in connection with a claim for affirmative relief that is dismissed under this rule, the notice of lis pendens connected with the dismissed claim is automatically dissolved at the same time."); Vonmitschke-Collande v. Kramer, 841 So.2d 481, 482 (Fla. 3d DCA 2002) ("The Florida Supreme Court made it abundantly clear that when an underlying case's dismissal is reversed, the accompanying lis pendens is reinstated."), review denied sub nom. Kramer v. Mitschke-Collande, 847 So.2d 977 (Fla. 2003).
The above analysis does not end the inquiry in the instant case, however, because section 48.23(2), Florida Statutes, limits the validity of a notice of lis pendens to one year where the claim is not founded on a recorded instrument or a lien under part I of chapter 713, absent a trial court's exercise of discretion in extending the time limitation "as justice requires." § 48.23(2), Fla. Stat. (2006); see also § 48.23(3), Fla. Stat. (2006) ("When the initial pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of chapter 713, the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions.").
Although the record does not indicate that Olesh filed a motion to extend the *244 time under section 48.23(2), a hearing was held on Greenberg's motion to dissolve the lis pendens wherein the trial court ruled that it was not inclined to remove the lis pendens at that time, but would do so "when we get closer to selling this property and having a closing date set." The trial court entered a written order denying the motion to dissolve. Arguably, the court's intent was to extend the lis pendens to some future date, even one outside the one-year period. Because the trial court's intent is not clear from the record before us, and based on the facts and circumstances of this case, we believe that upon remand, Olesh should be allowed to seek an express extension of the lis pendens, whereupon an evidentiary hearing on the matter could be held. If the trial court finds grounds to continue the lis pendens, the trial court has the power to require Olesh to post a bond or impose other conditions or limitations. Avalon Assocs. of Del. Ltd. v. Avalon Park Assocs., Inc., 760 So.2d 1132, 1134 (Fla. 5th DCA 2000).

Denial of Olesh's Motion to Amend the Complaint
We also believe that the trial court abused its discretion in refusing Olesh's written motion to amend the complaint. The proposed amended complaint offered by Olesh did not inject new theories into the case, but was an attempt to clarify the original complaint to properly plead the existing causes of action. Under these circumstances, the trial court abused its discretion in denying Olesh's motion. B.P. Dev. & Mgmt. Corp. v. P. Lafer Enters., Inc., 538 So.2d 1379, 1381 (Fla. 5th DCA 1989) ("Where summary judgment should be entered in a cause but it appears that the unsuccessful party may have a cause of action or defense if properly pleaded, the proper procedure is to grant the motion for summary judgment but with leave to amend."); O'Brien v. Young, 538 So.2d 112 (Fla. 2d DCA 1989).

Conclusion
We conclude, based on the unique facts and circumstances of the instant case, that the summary final judgment and the order dissolving the lis pendens must be reversed and this case remanded for further proceedings on the merits. Olesh should be permitted to file an amended complaint and seek extension of the lis pendens. Because we voice no opinion as to the validity of the letter purportedly containing the signatures of both Greenberg and Olesh, Greenberg should be allowed to raise the issue of fraud should she believe the letter agreement is a forgery.
REVERSED and REMANDED for further proceedings consistent with this opinion.
TORPY and EVANDER, JJ., concur.