WOLF, J.
Appellant, Smurfit Stone (Smurfit), seeks review of a trial court’s order granting summary judgment in favor of appel-lees, the City of Jacksonville (the City) and Zion Limited (Zion) and dismissing Smur-fit’s two-count complaint for declaratory and injunctive relief. We affirm in part and reverse in part, determining the trial court incorrectly concluded the right of first offer (ROFO) in question constituted an unreasonable restraint on the alienability of the subject parcel.
In 1989, Zion and Smurfit’s predecessors in interest entered into a land sales agreement which included a ROFO as to an adjoining parcel of land (the subject parcel). The ROFO was recorded shortly after the transaction and stated in pertinent part:
Seller shall not sell, convey or transfer the property or any part or portion thereof from time to time to a ... third party ... without first offering to sell the Property or any part or portion thereof to Purchaser. At such time as Seller desires to sell all or any part of the Property, Seller shall give written notice ... to Purchaser ... Within ninety (90) days of the Purchaser’s receipt of the Seller’s Notice, Purchaser shall have the right (“Right of First Offer”) to propose to Seller by written notice to Seller a price (“Purchaser’s Price”) at which Purchaser would purchase marketable fee title to the Sale Property ... If Seller does not accept the Purchaser’s Price within the aforesaid fifteen day (15) period, Seller may proceed to sell the Sale Property to a Third Party at a price not less than the Purchaser’s Price and Seller shall have a period of one year (“Alternate Offer Period”) from the date of the Seller’s Notice in which to sell such Sale Property, provided, however, that (x) if such sale is not consummated within the Alternate Offer Period, Purchaser shall retain its Right of First Offer and no sale shall be made by Seller without Seller first offering to sell to Purchaser as provided above or (y) if such sale is consummated for a purchase price which is lower than the Purchaser’s Price, then such purported sale and transfer of the Sale Property shall be void and Purchaser shall have the Right of First Offer to purchase the Sale Property. ...
In December 2004, Zion sold the subject parcel to the City for approximately $800,000 plus a $700,000 donation from Zion, allegedly without providing notice to Smurfit, as required by the ROFO. At the time, the land was valued at $1,500,000.
Smurfit filed a two-count complaint. In count I, Smurfit sought a declaratory statement establishing the ROFO was (1) valid and enforceable between Zion and Smurfit and (2) Zion had not provided *57 notice as required by the agreement. In count II, Smurfit sought injunctive relief requiring the City to offer Smurfit the property it had purchased from Zion at the same terms and conditions upon which it had been conveyed to the City.
We affirm the dismissal of the second count because Smurfit did not properly plead all the necessary elements for obtaining injunctive relief or specific performance, and it failed to move to amend the complaint in the trial court. Fox v. Harris, 773 So.2d 107 (Fla. 1st DCA 2000) (holding appellant may not seek leave to amend a complaint from an appellate court without first moving to amend in the trial court).[1]
In granting summary judgment as to the request for declaratory relief, the trial court concluded the ROFO amounted to an unreasonable restraint on the alien-ability of the subject property because the right was unlimited in duration, did not include the purpose for its creation, and prohibited charitable contribution of the land. However, in so holding, the trial court applied the wrong analysis. Specifically, in Iglehart v. Phillips, 383 So.2d 610, 614 (Fla.1980), the seminal case on the matter of preemptive rights and the alienation of property, the supreme court announced the Florida analysis to be applied in these situations, stating:
The rule against unreasonable restraints on the use of property concerns restraints of such duration that they prevent the free alienation of property.... The test which should be applied with respect to restraints on alienation is the test of reasonableness. The validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable.
(Emphasis added); see also Kelley v. Burnsed, 805 So.2d 1101 (Fla. 1st DCA 2002) (holding fixed price option in lease was not an unreasonable restraint because it encouraged improvements on the land in hopes of a purchase).
Since Iglehart, Florida courts have handled restrictions on alienability on a case by case basis; however, each case has considered whether the restraint (1) negatively impacts the marketability of the property and/or (2) discourages improvements to the property. See Sandpiper Development & Construction, Inc. v. Rosemary Beach Land Co., 907 So.2d 684 (Fla. 1st DCA 2005) (upholding a fixed price repurchase option even though it restricted the marketability of the property and discouraged improvement where the restriction lasted only six years); Metropolitan Dade County v. Sunlink Corp., 642 So.2d 551, 553 (Fla. 3d DCA 1992), (invalidating a provision in a sales contract which defined only a limited class of persons capable of purchasing the subject land and because “[t]he restrictive covenant in question unreasonably limits the marketability of the property.”); Camino Gardens Ass’n, Inc. v. McKim, 612 So.2d 636, 642 (Fla. 4th DCA 1993) (citing Iglehart and invalidating a repurchase option which allowed a homeowner’s association to repurchase foreclosed property for the cost due on the mortgage rather than the fair market value of the property because the option “reduces the incentive of mortgage lenders to finance the purchase of this property”); Brine v. Fertitta, 537 So.2d 113, 114 (Fla. 2d DCA 1988) (holding re *58 purchase option was an unreasonable restraint on right of alienation because it was for an indefinite period and included a fixed price which was not adjustable based on the market value of the property); Aquarian Foundation, Inc. v. Sholom House, Inc., 448 So.2d 1166 (Fla. 3d DCA 1984) (invalidating association’s covenant allowing association to disapprove of prospective purchasers because the covenant impedes the improvement and marketability of the property and does not protect the property owner’s right to receive fair market value for his or her property).
While the outcomes of these cases have varied considerably, each analysis was contingent upon whether the restraint (1) undermined the marketability of the land and/or (2) discouraged improvement to the land. Iglehart, 383 So.2d at 614. To the contrary, appellant and the trial court incorrectly concluded an analysis of these types of provisions requires a court make a determination based solely on (1) the restraint’s duration; (2) the fixed nature of the price term; and (3) the purpose for the restriction. While these factors may bear on the crucial question of whether the restriction negatively affects the marketability and improvement of the property, the factors do not dictate an outcome independent of a resolution as to the ultimate questions of alienability and developability.
In the underlying case, the language of the ROFO establishes it is unlimited in duration, does not include a fixed price term, and has no known purpose in the embodiment of the document. However, the unlimited duration of the ROFO does not invalidate the provision because the plain reading of the ROFO demonstrates the marketability of the property is not unduly restricted nor would it dissuade the owner from improving the land.
Specifically, the ROFO in the instant case requires the owner of the land to notify appellant if and when the owner chooses to sell the land in question. Once that offer is made, appellant has the option to offer a price, and the seller is free to reject that price and sell the property for more than that offer to any willing buyer. Thus, the ROFO does nothing more than provide a prospective purchaser before the land is offered for sale to the general public. This type of “restriction” would not deter improvement of the land because there is no restriction as to price and the seller is not required to take appellant’s offer if it feels the land is worth more than what was offered. Further, as to marketability, this type of provision creates a constant prospective purchaser for land, a condition most sellers do not have the good fortune to enjoy.[2]
The trial court is correct that the ROFO may deter charitable contribution; however, some minimal limitation on alienability does not require overturning an agreement voluntarily entered into by the parties. “Sanctity of contract is fundamental in the law of this country, so much so that it is protected by the Constitution.” Perry Banking Co. v. Swilley, 154 Fla. 221, 17 So.2d 103, 104 (1944). Smurfit and Zion’s predecessors in interest bargained for and entered into a contract supported by consideration. While public policy disfavors unreasonable restrictions on alienability, when these competing interests are balanced in the underlying situation, the restriction on alienability is not so onerous or unreasonable as to defeat the inherent right to freedom of contract.
*59 For these reasons, we reverse and remand the trial court’s order granting summary judgment in favor of appellees as to count I but affirm the dismissal of count II. We further reverse the order dissolving the lis pendens. Olesh v. Greenberg, 978 So.2d 238, 243 (Fla. 5th DCA 2008) (reversing the order dissolving the lis pen-dens along with the reversal of the summary judgment pursuant to Florida Rule of Civil Procedure 1.420(f)); see also Mr. Sign Sign Studios, Inc. v. Miguel, 877 So.2d 47, 48 n. 1 (Fla. 4th DCA 2004); Vonmitschke-Collande v. Kramer, 841 So.2d 481, 482 (Fla. 3d DCA 2002).
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
KAHN and WEBSTER, JJ„ concur.

. We also note that the remedy requested by Smurfit was not a remedy provided for within the contract.

. While appellees argue that appellant could discourage alienability by making a bad faith high offer and then not closing on the property, this argument ignores the language of the contract requiring appellant to proceed in good faith to consummate the purchase.