DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PALM BEACH POLO HOLDINGS, INC.,**
a Florida corporation
Appellant,

v.

**ETHRENSA FAMILY TRUST COMPANY,**
as Trustee of Saskia Land Trust,
Appellee.

No. 4D2022-3003

[November 29, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Maxine Cheesman, Judge; L.T. Case No. 2021CA005560XXXXMB.

Larry A. Zink of Zink, Zink & Zink Co., L.P.A., Hillsboro Beach, for appellant.

Robert J. Mansen, David Stone and Ronnie Bronstein of Mansfield Bronstein & Stone, LLP, Fort Lauderdale, for appellee.

WARNER, J.

Appellant, Palm Beach Polo Holdings, Inc., the third-party defendant and counter-plaintiff (Polo Holdings), appeals the final judgment finding that its right of first refusal and option to repurchase in its contract for sale of a lot in its development was an unreasonable restraint on marketability, because the right/option was of unlimited duration and based upon a fixed price which was far less than market value. The contract contained two provisions setting forth circumstances that would trigger the right/option. We reverse, because under the reasonableness test of *Iglehart v. Phillips*, 383 So. 2d 610 (Fla. 1980), we conclude that the right/option was not an unreasonable restraint on alienation.

**Facts**

In 2014, Polo Holdings, the developer of Palm Beach Polo and Country Club, entered into a contract to sell an unimproved residential lot to Saskia

Land Trust, of which Ethrensa Family Trust Company, appellee, was a trustee. A material term of the contract provided that the purchaser agreed to commence construction of a home on the lot within twenty-four months of closing. In the event of a default on this provision, the seller could exercise its option to repurchase the property at a set price. In addition, the contract provided in another section that Ethrensa agreed not to sell the property to a third party prior to construction of a home on the lot.

These material terms of the contract are as follows:

**5. CONSTRUCTION BY PURCHASER**:

A. Purchaser agrees to construct a single family detached residence upon the Lot and agrees that commencement of the construction of said residence shall begin within twenty-four (24) months of Closing. . . .

B. Prior to construction Purchaser shall have secured the written approval of Seller and the Architectural Committee of the plans and specifications and landscaping of the residence which Purchaser proposes to construct on the Lot. . . .

. . . .

D. In the event Purchaser does not meet any or all of its obligations under this Article 5, . . . Seller is hereby granted a Right of First Refusal and Option to purchase the Property upon the terms and conditions as set forth in Exhibit "B" attached hereto and incorporated herein by this reference (the "Right"). Purchaser acknowledges and agrees that the Right is a material part of this transaction without which Seller would not have entered into this Agreement with Purchaser.

E. The provisions of this entire Article 5 shall survive Closing.

**6. RESTRICTION ON CONVEYANCE**:

A. Purchaser agrees that it will not transfer, sell, convey or assign its interest in the Lot to any person or entity, following the Closing of this Agreement until a single family detached residence, approved as provided in Article 5(B) hereof, has been completed upon said Lot, as evidenced by the issuance of a certificate of occupancy issued by the Village.

2

B. Notwithstanding anything to the contrary in this Agreement, in the event Purchaser defaults in its obligation set forth in this Article 6, Seller shall be afforded any and all right and remedies set forth in the Right.

C. The provisions of this entire Article 6 shall survive Closing.

The right/option which was an exhibit to the contract stated in pertinent part:

(a) The purchase price shall be the lesser of the price Purchaser desires to sell the Property to a buyer (documented by such evidence as Seller may require) or ninety percent (90%) of the purchase price paid by Purchaser to Seller for the Lot.

. . . .

(c) Closing [on the Right/Option] shall occur sixty (60) days after Seller notifies Purchaser in writing that (1) a default has occurred, and (2) Seller elects to exercise this right of first refusal.

(h) Provided Purchaser fulfills all of its obligations hereunder, upon receipt of (1) Seller's approval of Purchaser's plans and specifications as provided in Article 5(b) hereof and (2) the request of an Institutional Lender who has issued a written commitment to finance the construction of a residence upon the lot which requires as a condition of such financing that the Right be released, Seller shall thereupon execute a release of the right upon the lot. . . .

(i) If not released as provided in (h) above, upon completion of construction of the residence upon the Lot, in accordance with the terms and conditions as set forth in this Agreement, as evidenced by the issuance of a Certificate of Occupancy by the Village, Seller shall deliver to Purchaser, in recordable form, a release of this right.

The lot's purchase price in the contract was $800,000. Thus, ninety percent (90%) of the purchase price would be $720,000 should the right/option be exercised. The Palm Beach County Property Appraiser's assessed value of the lot was $845,745.00 as of 2021.

Ethrensa did not construct a residence on the lot and in 2021 entered into a vacant land contract with Wilmot Realty Co., LLC, who was succeeded by Wellington Acquisition, LLC after an assignment of the contract. The agreed purchase price was $1,200,000, but the agreement required Ethrensa to obtain a release of the right/option.

Ethrensa became aware that Polo Holdings intended to assert its right/option. When Ethrensa failed to close, Wellington Acquisition, LLC filed a suit against Ethrensa for breach of contract and specific performance.

Because Polo Holdings would not release the right/option, Ethrensa filed a third-party complaint in June of 2021 against Polo Holdings. Ethrensa sought a declaratory judgment against Polo Holdings that "the Right of First Refusal and Option is unenforceable because it is for an indefinite duration and includes a fixed repurchase price far below market value, which is far below even the original purchase price Plaintiff paid for the Property in May of 2014."

Before filing an answer, Polo Holdings sent a notice of default and an "Exercise of Right of First Refusal." The notice stated that a residence had not been built on the lot in violation of and default of section 5 of the contract. Also, the notice stated that Ethrensa had entered into a contract to sell the lot to a third party in violation of and default of section 6 of the contract. The notice further stated that Polo Holdings was exercising its right/option to purchase the lot from Ethrensa for $720,000.

Polo Holdings then filed an answer, affirmative defenses, and counterclaims to Ethrensa's third-party complaint. Polo Holdings alleged a counterclaim for breach of the contract and a counterclaim for specific performance demanding that Ethrensa comply with the right/option.

Ethrensa responded to the counterclaims with an answer and affirmative defenses, asserting that Polo Holding's claimed right/option was unenforceable as an unreasonable restraint on alienation. Ethrensa also raised the statute of limitations, waiver, and laches as affirmative defenses.

Polo Holdings moved for summary judgment both as to Ethrensa's third-party complaint as well as its counterclaim for specific performance and breach of contract. Polo Holdings contended that both sections 5 and 6 of the contract granted it the right/option to repurchase the property and were enforceable. According to Polo Holdings, Ethrensa's action of

entering into the agreement to sell the lot to Wellington Acquisition, LLC "triggered" Polo Holdings' ability to exercise its' right/option under Section 6 of the contract and the failure to accept Polo Holdings' exercise of the right/option was a breach of contract. Polo Holdings further argued that specific performance of the right/option at the "agreed upon price of $720,000" was appropriate based on the breach of both sections 5 and 6.

In support of its motions for summary judgment, Polo Holdings filed the affidavit of Glenn Straub, president and principal stockholder in Polo Holdings. Straub testified that the purpose of the right/option in the contract, sections 5 and 6, was "to encourage the Purchaser to construct a residence on the Lot, because having vacant lots for extended periods of time is not good for the development." He also testified that the right/option's purpose here and in other contracts was "to encourage the construction of residences on the lots and to discourage the mere speculation on the lot by purchaser[.]"

Ethrensa filed a competing motion for summary judgment as to both its third-party complaint and Polo Holdings' counterclaims. Ethrensa argued that the right/option was unenforceable "because it is for an indefinite duration and includes a fixed repurchase price far below market value, which is far below even the original purchase price which was paid for the Property in May of 2014 according to the face of the Contract." Ethrensa also argued that Polo Holdings' claims were barred by the statute of limitations.

In granting summary judgment in favor of Ethrensa, the trial court relied on *Iglehart v. Phillips*, 383 So. 2d 610 (Fla. 1980), to find that the right/option constituted an unreasonable restraint on alienation, because it was a fixed price repurchase option of unlimited duration. The price was the lower of ninety percent of the original purchase price or the price of sale. Because the proposed sale price was substantially higher than the market price, the court determined that the option price of $720,000 was well below market and unreasonable. Alternatively, the court found that the statute of limitations barred enforcement of the option, because the one-year limitation for a specific performance cause of action for violation of Article 5, the obligation to commence construction within twenty-four months of the closing of the contract, had already run.

## Analysis

From this final summary judgment, Polo Holdings takes this appeal. A trial court's entry of summary judgment is reviewed de novo. *Blind Monk, LLC v. USO Norge Whitney, LLC*, 368 So. 3d 980, 983 (Fla. 4th DCA 2023).

"Summary judgment is appropriate where the movant shows no genuine disputes as to any material facts remain and the movant is entitled to judgment as a matter of law." *Id.* (citing Fla. R. Civ. P. 1.510(a)). A trial court's interpretation of a contract is also reviewed de novo. *Inlet Colony, LLC v. Martindale,* 340 So. 3d 492, 494 (Fla. 4th DCA 2022).

In determining that the right/option to repurchase the lot in the contract violated the rule against unreasonable restraints on alienation, the trial court relied on *Iglehart.* We conclude, however, that under the contract in this case, the general rule in *Iglehart* does not apply.

We first examine *Iglehart.* There, the grantor conveyed over 300 acres of land to the grantee, by deed containing a right of repurchase in the event the grantee sought to sell the property, which according to the deed was a covenant running with the land. 383 So. 2d at 611–12. According to the documentary stamps attached to the deed, reflecting a tax, the consideration was between a dollar and one hundred dollars for the land worth two hundred dollars at that time. *Id.* at 612. The repurchase price in the deed was set as the original amount paid by the grantee plus the cost of any improvements made on the land. *Id.* at 611. During the twenty years after the purchase, the grantee and his family improved the land, including the construction of a house and fences. *Id.* at 612.

The plaintiff in *Iglehart* was the son of the original grantee. *Id.* at 611. He sought a declaratory judgment to determine the restrictive covenant invalid; the grantor counterclaimed to have the repurchase option be declared valid, or the entire transaction rescinded. *Id.* According to the plaintiff, the purchase price for the land was ten dollars. The defendants contended that the sole consideration was the repurchase option. *Id.* at 612.

The suit was filed in federal court, and the district court granted summary judgment for the plaintiff, holding that the restriction was void. *Id.* The court "expressly found the option restraint was unreasonable because (1) there was no purpose for which the restraint is imposed; (2) the duration of the restraint was unlimited; and (3) the method of determining the price to be paid was unreasonable in light of the value of the land today, thus creating a substantial restraint on the alienation." *Id.* On appeal, the Fifth Circuit certified questions to the Florida Supreme Court to resolve the issues in the case, which included whether the covenant violated the rule against perpetuities and the rule against unreasonable restraints on alienation. *Id.* at 613.

In this case, while we consider only the rule against unreasonable restraints, the *Iglehart* court noted:

> Although distinct entities, these rules share a common public interest and purpose. They each came into existence to facilitate the marketability and continued utilization of property. *In simple terms, their purpose is to ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time.*

*Id.* (emphasis supplied). In discussing the rule against unreasonable restraints, the supreme court explained:

> While the rule against perpetuities invalidates interests which vest too remotely, the rule against unreasonable restraints is principally concerned with the duration of a restraint on the property rather than the time of vesting. The test which should be applied with respect to restraints on alienation is the test of reasonableness. The validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable.

*Id.* at 614. The court noted that the general rule allows a market priced option for unlimited duration and analogized it to an option contained in a long-term lease. *Id.* at 615–16.

*Iglehart* quoted with approval from *Wing, Inc. v. Arnold*, 107 So. 2d 765 (Fla. 3d DCA 1958), where the court found an option to purchase contained in a ninety-nine-year lease with the price to be determined by appraisal was not violative of the rule against perpetuities. *Iglehart*, 383 So. 2d at 615. The supreme court noted that the rationale rejecting application of the rule against perpetuities was "equally" applicable in an unreasonable restraint case:

> The reasoning given to the majority view is that *improvement of the land is stimulated rather than retarded by the presence of an option to purchase in the lessee, and substantial improvements may be made by the lessee with impunity.* Without the benefit of such an option it would not be good business for a lessee to make improvements which would have substantial value at the end of the lease term; and a contrary

7

rule would defeat the policy favoring free alienation and use of property, . . .

*Id.* (emphasis supplied) (citing *Wing,* 107 So. 2d at 769). The supreme court then noted: "It is the generally accepted rule that a fixed price repurchase option of unlimited duration, *independent of the lease*, is an unreasonable restraint." *Id.* (emphasis supplied).

An option for a fixed price clearly discourages any improvements of the land by the existing property owner because he could never recover the value of the improvements should the optionee exercise the option. It is important, however, to distinguish this type of option from a dependent fixed price option contained in a lease. In the latter instance, the option is reasonable because it encourages improvements by the optionee-possessor, as they would inure to him at no increase in price upon the exercise of the option. These two situations illustrate *the necessity to determine the effect of the option on the use and improvement of the property in order to determine its reasonableness.*

*Id.* (emphasis supplied). The court invalidated the option after concluding that the option was for a fixed price and of unlimited duration, thus impeding the sale of the property because the increased value of the property and improvements would never be realized on a sale. *Id.* at 616.

Analyzing *Iglehart* and how it has been applied by various courts, the First District aptly noted:

While the outcomes of these cases have varied considerably, each analysis was contingent upon whether the restraint (1) undermined the marketability of the land and/or (2) discouraged improvement to the land. *Iglehart,* 383 So. 2d at 614. To the contrary, appellant and the trial court incorrectly concluded an analysis of these types of provisions requires a court make a determination based solely on (1) the restraint's duration; (2) the fixed nature of the price term; and (3) the purpose for the restriction. While these factors may bear on the crucial question of whether the restriction negatively affects the marketability and improvement of the property, the factors do not dictate an outcome independent of a resolution as to the ultimate questions of alienability and developability.

8

*Smurfit-Stone Container Enters., Inc. v. Zion Jacksonville Ltd. P'ship*, 52 So. 3d 55, 58 (Fla. 1st DCA 2010). Similarly, in this case the trial court focused on the duration of the restraint and the fixed price. The court even rejected Polo Holdings' president's affidavit, regarding the purpose of the restriction as irrelevant.

In applying *Iglehart* to the contract's provisions in this case, we first note that while the trial court construed both contract sections 5 and 6 together, those sections are two separate rights/options. The first required the purchaser to commence construction of a residence within two years (with certain extensions), and upon failure to do so, the seller could exercise its right to repurchase the lot for ninety percent of the original sale price. This was an option of limited duration, because when the time period for commencement of construction passed, the seller would have only one year to declare a default and bring a specific performance claim to exercise its right/option. *See* § 95.11(5)(a), Fla. Stat. (2016); *see also Wing,* 107 So. 2d 765 (lessor did not have right to cancel lease and declare a forfeiture where lessor breached provision requiring it to reconstruct destroyed buildings, where breach occurred, and lessor failed to enforce provision for over two years).

We agree with the trial court that the statute of limitations period to enforce the right/option based upon the purchaser's breach of the contract's provision regarding construction of the residence began after the two-year period for construction expired without the purchaser commencing construction of the residence. Therefore, the first contractual provision in section 5, providing for exercise of the right/option, is of limited duration but sets an option price which is generally well below current market value.

The second right/option, dealing with the sale of the lot, is of unlimited duration and permits Polo Holdings the right to repurchase the lot should Ethrensa decide to sell the lot without constructing a residence on it. That gives rise to Polo Holding's right/option to repurchase the lot, again for a price well below market value.

However, in contrast to *Iglehart*, where the option did not apparently serve any purpose but to benefit the grantor, the right/option in this case was a material term of the contract and crafted to require its development, not hinder it. As Polo Holdings' president testified in his affidavit, land lots that remain vacant for a long period of time have a detrimental effect on a development. As well, the right/option discourages the purchaser from land speculation. If the restriction's validity depends upon the long-term effect on the improvement and marketability of the property, as

9

*Iglehart* stated, then this restriction which compels improvement of the property has that valid effect.

Furthermore, in the original contract of sale, the purchaser *agreed* to construct a residence on the property. The two contract provisions are in place to compel the performance of that agreement. The purchaser can avoid entirely the application of the right/option simply by doing as agreed in the contract. Pursuant to the contract, the right/option would have been released even before commencement of the residence's construction if an institutional lender had requested the release in connection with a construction loan, or the right/option would also have been released upon completion of the residence.

Thus, the right/option is more like a dependent covenant in a long-term lease, which allows the lessee to purchase and secure the benefits of its improvement to the property. Just as with the lease option, the use and improvement of the property is *enhanced* by the presence of the right/option, which clearly provides an inducement for the purchaser to improve the property and not to speculate on vacant land. The value of the improvements, if made by the purchaser, inures to the purchaser's benefit, not to the developer's benefit.

We find that the long-term effect of the right/option in this case is to require the improvement of the property, which does not unreasonably restrict alienation. The purchaser *agreed* to improve the property as a material term of the contract of its purchase; the right/option assured that improvement. Both contract provisions served to encourage improvement of the lot. Pursuant to *Iglehart*, "common sense dictates" that the right/option contractual provisions are reasonable. Thus, no unreasonable restraint on alienation exists.

This conclusion is reinforced by *Sandpiper Development and Construction, Inc. v. Rosemary Beach Land Co.*, 907 So. 2d 684 (Fla. 1st DCA 2005). There, the land sale contract included a requirement to commence construction of a residence on the property within three years and to complete construction within six years. *Id.* at 685. If the owner failed to comply, the seller could exercise an option to repurchase the property for the original cost plus the cost of any improvements made. *Id.* The court distinguished *Iglehart* and found that the option of limited duration for a fixed price was not unreasonable:

> On balance, we do not find that the repurchase option here is an *unreasonable* restraint on the alienation of property, as defined in *Iglehart*. The court in *Iglehart* did not disavow the

10

legitimacy of fixed price options. The purpose of the option here is legitimate, the duration is of a reasonably short period, and the price alone does not invalidate the overarching legitimate rationale to control the pace of development of the community.

*Id.* at 687.

*Sandpiper* directly supports the determination that the first option in this case is not an unreasonable restraint on alienation. We also find that the decision supports the finding that the second option, which can be exercised should Ethrensa seek to sell the property, is not unreasonable, because there is a "legitimate rationale to control the pace of development of the community." *Id.* In fact, the right/option gives Ethrensa practically unlimited opportunity to improve the property and obtain the benefits of any improvement. Even if the two-year term for commencing construction passes, and Polo Holdings does not exercise its first right/option, Ethrensa can construct a residence and the second right/option is released, as Ethrensa completely controls whether that right/option can be exercised. The second option does not constitute an *unreasonable* restriction on the alienation of property.

As an alternative to holding the options invalid, the court also found that Polo Holdings' counterclaim for specific performance was barred by the statute of limitations. While we agree that the enforcement of the first option was barred by the statute of limitations, *see Wing*, specific performance of the second option did not accrue until Ethrensa entered into a contract to sell the property without having constructed a residence on it. Polo Holdings filed suit within the applicable statute of limitations to exercise the second right/option.

**Conclusion**

The two restrictions contained in the contract of sale between Polo Holdings and Ethrensa's principal did not violate the rule against unreasonable restraints on alienation, because both restrictions encouraged development of the property which would enhance its marketability. The court erred in holding the restrictions void as violative of that rule as set forth in *Iglehart.* While the court correctly found that the statute of limitations barred enforcement of the first right/option to repurchase based upon the failure to construct a residence within two years of closing, Polo Holdings' suit for specific performance of the second right/option did not violate the statute of limitations. As to all other issues

raised, we affirm. We thus reverse the final summary judgment and remand for further proceedings.

*Affirmed in part and reversed in part.*

GROSS and DAMOORGIAN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***